## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## ATHENS DIVISION

ALEXANDRA O'TOOLE,

     Plaintiff,

v.

THE BOARD OF REGENTS OF THE
UNIVERSITY SYSTEM OF GEORGIA,

     Defendant.

CIVIL ACTION FILE NO:

## **COMPLAINT**

Plaintiff, ALEXANDRA O'TOOLE files the following complaint against

Defendant BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA and

alleges as follows:

### **INTRODUCTION**

1.

This is an action brought by Alexandra O'Toole for pregnancy

discrimination. Ms. O'Toole is suing because, after coaching the University of

Georgia Equestrian Team in "Over Fences" events to one of the best showings in

recent years, she was fired by head coach Meghan Boenig.  At the time, Ms.

O'Toole was seven months pregnant and had endured taunts about her pregnant

condition and questions concerning her priorities and availability for the coming

recruiting season only a few months away.   Ms. O'Toole's pregnancy and desire for pregnancy leave under the Family Medical Leave Act was a determinative factor that made a difference in the decision to fire Ms. O'Toole or, at least was a motivating factor.  As a result, the Defendant violated Ms. O'Toole's right to be free from pregnancy discrimination and interfered with her right to take leave for the birth of a child under: (a) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), as amended by the Pregnancy Discrimination Act (42 U.S.C. § 2000e(k)) ("Title VII"); (b) Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681(a) ("Title IX"); and (c) the Family Medical Leave Act, 29 U.S.C. § 2612(a)(1)(A) *et seq.* ("FMLA").

In addition to personally and financially damaging Ms. O'Toole, the effect of the Defendant's actions, by and through its agents, the officers and mangers of the University of Georgia, including Ms. Boenig, has been to undermine and disrupt the effectiveness and success of the Equestrian Team in the "Over Fences" event, deprive Ms. O'Toole of current employment opportunities, cause damage to her reputation, and interfere with her future employment opportunities and career. For this reason, Ms. O'Toole is seeking reinstatement, back pay, front pay, and compensatory damages as well as further and additional monetary, injunctive and equitable relief, including liquidated damages and attorneys' fees.

<u>**JURISDICTION AND VENUE**</u>

2.

The jurisdiction of this Court is invoked pursuant to: 42 U.S.C. § 2000e-5(f)(3) based on gender/pregnancy discrimination in violation of Title VII; 20 U.S.C. §§ 1681, based on gender/pregnancy discrimination in violation of Title IX; and 29 U.S.C. § 2617(a)(2) based on violations of the FMLA.  As such, this case derives from a federal question for which jurisdiction is appropriate under 28 U.S.C. § 1331 and from claims of civil rights violations for which jurisdiction is appropriate under § 1343(a)(4).

3.

Venue is proper pursuant to 28 U.S.C. § 1391 in that the unlawful employment practices and the violations of Plaintiff's rights alleged below were committed in this judicial district.

<u>**PARTIES**</u>

4.

Plaintiff, Alexandra O'Toole, is a former Assistant Equestrian Coach for the University of Georgia.  Ms. O'Toole is a legal resident and citizen of the United States and of the State of Georgia and submits herself to the jurisdiction of this Court.

5.

Defendant Board of Regents of the University System of Georgia maintains its principal office at 270 Washington Street, S.W., Atlanta, Georgia 30334. For all purposes here, Defendant Board of Regents was doing business as and continues to do business through one of its institutional units, the "University of Georgia," and references to the "Board of Regents" or "Defendant" or the "University of Georgia" or "UGA" should be deemed to include and refer to both the Board of Regents and the University of Georgia unless otherwise specified.

6.

Defendant Board of Regents is subject to the jurisdiction of this court and may be served by delivering process to Kimberly Ballard-Washington, the Associate Vice Chancellor for Legal Affairs of the Board of Regents of the University System of Georgia, who is one of Defendant's agents for service of process.

7.

Defendant Board of Regents of the University System of Georgia and its institutional unit, the "University of Georgia," operate educational programs or activities for which they receive Federal financial assistance and are therefore subject to the requirements of Title IX.

## ADMINISTRATIVE PROCEDURES

### 8.

On or about June 25, 2018, Ms. O'Toole filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge No. 410-2018-06997, alleging gender and pregnancy discrimination against the Defendant.

### 9.

On or about, November 14, 2018, Ms. O'Toole received her Notice of Right to Sue from the EEOC.

### 10.

Accordingly, Ms. O'Toole is filing the instant Civil Action within the requisite ninety (90) days of her receipt of the Notice of Right to Sue.

## STATEMENT OF FACTS

### INTRODUCTION

### 11.

The University of Georgia sponsors a Women's Equestrian Team that competes in the NCAA Division I Equestrian Program.

### 12.

The UGA Equestrian Team is composed of two disciplines, Western and

Hunt Seat or English, each of which have two events.  Western has horsemanship and reining, while Hunt Seat has Over Fences and Flat.

13.

The UGA Equestrian Team's head coach is and for all times relevant hereto was, Meghan Boenig.

14.

As head coach, Ms. Boenig delegated coaching responsibilities for the Western events and Hunt Seat Over Fences event to one assistant coach each, reserving overall responsibility and the Flat event for herself.

15.

During the 2015-2016 Equestrian season, the UGA Equestrian Team had failed to capture any championship titles.

16.

During the same season, in the Over Fences event, UGA recorded 9 wins, 2 ties, 5 losses and failed to win their event at the SEC meet and failed to score a single point in at the National meet.

ALEXANDRA O'TOOLE

17.

Following the 2015-2016 season, in July 2016, Ms. Boenig hired Ms.

O'Toole as an Assistant Equestrian Coach for the University of Georgia's

Women's Equestrian Team.

18.

Ms. O'Toole was hired to coach the Over Fences event, having had first-

hand knowledge of the team and event as a former UGA Equestrian Team

member.

19.

In addition to her experience competing, Ms. O'Toole was also particularly

qualified for the position in that she was poised to receive and later did receive her

license to be a United States Equestrian Federation Hunter/Equitation judge.

20.

Furthermore, Ms. O'Toole had been a professional equestrian trainer and

coach for over ten years.

21.

In addition, Ms. O'Toole had established connections with numerous

equitation trainers and coaches that gave her access to equestrian recruits and horse

donors across the country.

PLAINTIFF'S 2016/17 OVER FENCES SEASON

22.

In Ms. O'Toole's first season as the Over Fences event coach, her riders received multiple "Most Outstanding Player" (MOP) awards and National Equestrian Association (NCEA) Fence Rider of the Month awards.

23.

In addition, her team logged 12 wins, 3 ties and only 3 losses for the event.

24.

In other areas of her job, Ms. O'Toole also performed well.

25.

For instance, Ms. O'Toole began creating relationships and bonds with new recruits and their families that would bring some of the top college equestrian athletes to Georgia.

26.

She also developed spreadsheets for documenting the medical treatments of 37 English discipline horses so as to monitor the soundness and health of those horses for the competitions.

27.

She established systems to track the team athletes' gear and the horses they

rode in each practice to balance their training.

28.

She maintained data on key recruiting-age athletes that was updated constantly with information on test scores, phone calls, trainer names and unofficial/official visit dates.

29.

Ms. O'Toole handled literally thousands of e-mails to and from recruits concerning the team, "friended" recruits on social media, followed their posts, and liked their posts to keep track of what was important to them in order to develop recruiting plans.

30.

Ms. O'Toole also organized official visits for the English riders and handled all the logistics, including tailgates, football sideline passes, access to football tickets, overnight stays, athletic facility tours, and meetings with key personnel such as the strength and conditioning coach, academic counselors, and academic department heads.

31.

In Ms. O'Toole's annual evaluation in June 2017, Ms. Boenig commented on her coaching effectiveness noting the visible and statistical improvement in the

Over Fences competitors, commenting that the riders were more successful, relaxed and prepared for meets and the horses were also doing well.

32.

Ms. Boenig also praised Ms. O'Toole's responsiveness to the recruits and her representation of the University.

33.

However, in the evaluation and continuing into the 2017-2018 season, Ms. Boenig began to make it clear that she preferred that there be no outside interference with Ms. O'Toole's coaching and time commitment to the team.

FALL 2017 RECRUITING SEASON

34.

In the Fall of 2017, Ms. O'Toole continued her recruiting and preparation for competition in the Spring.

35.

During this time, Ms. O'Toole became frustrated with Ms. Boenig's pre-occupation with her scheduling, alleged time away from the team, and a general lack of communication concerning her duties and responsibilities.

36.

Because of this frustration, Ms. O'Toole sought the advice of Assistant

Athletic Director Ted White, who suggested regular meetings and written to-do lists.

37.

As a result of this meeting with Mr. White, regular meetings between Ms. O'Toole and Ms. Boenig began in or around October 2017.

38.

The meetings with Ms. Boenig covered a variety of topics, including tasks required of Ms. O'Toole, plans for recruiting, care of horses, training schedules and Ms. O'Toole's completion of assignments.

39.

A regular issue in these meetings became matters of scheduling and Ms. O'Toole's availability despite the fact that there were never any notable deficiencies in her recruiting or the training she was providing for the Over Fences event.

PLAINTIFF'S PREGNANCY

40.

On December 1, 2017, Ms. O'Toole learned that she was pregnant and, a few days later, disclosed that fact to the Western coach, Laura Brainard, and Director of Operations, Scott Koss.

- 11 -

41.

On information and belief, by mid-December Ms. Boenig had become aware of Ms. O'Toole's pregnancy.

42.

Thereafter, Ms. Boenig began to consider the duration of Ms. O'Toole's contract and ways to replace her.

43.

In fact, in late December or early January, Ms. Boenig had a meeting with Ted White about Ms. O'Toole and was advised to continue working with Ms. O'Toole and hold off on any discussion of separation until after the season and if there was no improvement.

44.

In mid to late February, 2018, Ms. O'Toole formally announced her pregnancy.

45.

Shortly after this announcement, Ms. Boenig began further discussions with the UGA Athletic Association about terminating Ms. O'Toole's contract.

46.

During this time, Ms. O'Toole was on-track for another outstanding

competition season.

47.

Despite this fact, Ms. Boenig made disparaging comments related to Ms.

O'Toole's pregnancy and pregnant condition.

48.

For instance, Ms. Boenig would make demeaning comments about the size

of her breasts, the size of her stomach, and referred to her as "preggers."

49.

Then, in early April 2018, Ms. Boenig settled on a plan to terminate Ms.

O'Toole after the NCEA National Championship.

PLAINTIFF'S TERMINATION

50.

At the NCEA National Championship, Ms. O'Toole coached her riders to a

win in the semi-final Over Fences event, adding to her previous Over Fences win

against Auburn in the SEC Championship and completing a 12-2-5 winning

season.

51.

In addition to a winning season, Ms. O'Toole's riders placed first in the SEC

finals, bested the field on the first day of Nationals and received some of the

highest overall awards for their performance over the season.

52.

On May 1, 2018, Ms. Boenig asked Ms. O'Toole to meet her for lunch to discuss plans for the summer and up-coming recruiting season.

53.

During the course of that meeting, Ms. O'Toole raised the issue of her pregnancy and the time off she would need under the Family Medical Leave Act as well as scheduling for the recruiting season.

54.

During the meeting, Ms. Boenig gave no indication that she planned to terminate Ms. O'Toole but did comment on how little time off she took for her own pregnancy.

55.

Three days later, Ms. Boenig called Ms. O'Toole to a meeting with a Human Resources represented and terminated her employment.

56.

Ms. O'Toole was seven months pregnant at the time of her termination.

WILLFUL CONDUCT AND DAMAGES

57.

In terminating Ms. O'Toole, Defendant, by and through its agents, the officers and mangers of the University of Georgia, including Ms. Boenig, acted intentionally, willfully, maliciously, and in bad faith for the purpose of discriminating against Ms. O'Toole on account of her pregnancy.

58.

The effect of the Defendant's above-stated actions has been to deprive Ms. O'Toole of employment opportunities, income in the form of wages, prospective employment benefits, including social security and other benefits, to which she would have been entitled but for Defendant's illegal actions.

59.

Defendant's above-stated actions have also caused Ms. O'Toole to suffer substantial out-of-pocket losses, loss of stature in her professional and local communities, damage to her reputation plus mental and emotional distress.

60.

Ms. O'Toole has further suffered physically from Defendant's conduct and actions, including but not limited to sleeplessness, nightmares, depression, extreme anxiety and stress, inhibited social and professional interactions and general malaise.

## COUNT ONE
### GENDER/PREGNANCY DISCRIMINATION IN VIOLATION OF TITLE VII

61.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

62.

By firing Ms. O'Toole because of her pregnancy or, alternatively, by taking her pregnancy into account as a motivating factor for her termination, Defendant Board of Regents, by and through its agents, the officers and mangers of the University of Georgia, including Ms. Boenig, violated Ms. O'Toole's rights to be free from sex discrimination in employment as guaranteed under the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), as amended by the Pregnancy Discrimination Act (42 U.S.C. § 2000e(k)).

63.

Defendant Board of Regents' actions -- by and through its agents, the officers and managers of the University of Georgia, including Ms. Boenig -- in firing Ms. O'Toole because of her pregnancy or, alternatively, by taking her pregnancy into account as a motivating factor for her termination were committed with reckless disregard for her right to be free from discriminatory treatment on account of her gender and pregnancy in violation of Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e-2(a), as amended by the Pregnancy Discrimination

Act (42 U.S.C. § 2000e(k)).

64.

The effect of Defendant Board of Regent's above-mentioned acts has been

to deprive Ms. O'Toole of equal employment opportunities and benefits due to her

because of her gender/pregnancy.

65.

The actions taken against Ms. O'Toole have further caused her to suffer

damages in the form of lost income, lost professional opportunities, reduction in

opportunities for performance-based raises or salary increases, damage to her

reputation, emotional distress and expenses of litigation including attorneys' fees.

66.

Accordingly, Ms. O'Toole is entitled to the equitable and monetary relief set

forth below for the violation of her rights under Title VII of the Civil Rights Act of

1964, including but not limited to back pay, front pay, compensatory damages as

well as further and additional monetary, injunctive and equitable relief, including

attorneys' fees.

## COUNT TWO
## GENDER/PREGNANCY DISCRIMINATION IN VIOLATION OF TITLE IX

### 67.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

### 68.

Defendant Board of Regents of the University System of Georgia and its institutional unit, the University of Georgia, operates educational programs or activities for which they receive Federal financial assistance and are therefore subject to the requirements of Title IX.

### 69.

By firing Ms. O'Toole because of her pregnancy or, alternatively, by taking her pregnancy into account as a motivating factor for her termination, Defendant Board of Regents, by and through its agents, the officers and mangers of the University of Georgia, including Ms. Boenig, violated Ms. O'Toole's rights to be free from sex discrimination in employment as guaranteed under Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681(a).

### 70.

Defendant Board of Regents' actions -- by and through its agents, the officers and managers of the University of Georgia, including Ms. Boenig -- in

firing Ms. O'Toole because of her pregnancy or, alternatively, by taking her pregnancy into account as a motivating factor for her termination were committed with reckless disregard for her right to be free from discriminatory treatment on account of her gender and pregnancy in violation of Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681(a).

71.

The effect of Defendant Board of Regent's above-mentioned acts has been to deprive Ms. O'Toole of equal employment opportunities and benefits due to her because of her gender/pregnancy.

72.

The actions taken against Ms. O'Toole have further caused her to suffer damages in the form of lost income, lost professional opportunities, reduction in opportunities for performance-based raises or salary increases, damage to her reputation, emotional distress and expenses of litigation including attorneys' fees.

73.

Accordingly, Ms. O'Toole is entitled to the equitable and monetary relief set forth below for the violation of her rights under Title IX of the Education Amendments Act of 1972, including but not limited to back pay, front pay, compensatory damages as well as further and additional monetary, injunctive and

equitable relief, including attorneys' fees.

## COUNT III
### INTERFERENCE WITH FMLA LEAVE

74.

Plaintiff incorporates by reference all of the preceding paragraphs of the

Complaint.

75.

Ms. O'Toole was an eligible employee with the need for leave because of

the birth of her child and to care for her child as defined by the FMLA and the

accompanying regulations, specifically 29 U.S.C. §§ 2611(2) and 2612(a)(1)(A),

29 C.F.R. 825.120 *et seq*.

76.

By firing Ms. O'Toole because of her pregnancy and desire for maternity

leave or, alternatively, by taking her pregnancy and desire for maternity leave into

account as a motivating factor for her termination, Defendant Board of Regents --

by and through its agents, the officers and mangers of the University of Georgia,

including Ms. Boenig -- prevented Ms. O'Toole from exercising the rights

provided to her under the FMLA.

77.

Defendant's actions in interfering with Ms. O'Toole's FMLA rights were committed with reckless disregard for her right to take up to 12 work weeks of leave time for birth of a child and violated the FMLA, 29 U.S.C. § 2612(a)(1)(A).

78.

The effect of Defendant's actions has been to deprive Ms. O'Toole of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits due her because of her right to leave under the FMLA.

79.

As a result, Ms. O'Toole is entitled to both equitable and monetary relief for Defendant's violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B) – including, but not limited to, back pay, front pay or reinstatement, attorneys' fees and costs of litigation.

80.

Ms. O'Toole is also entitled to liquidated damages for the violation of her rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii).

## COUNT IV
## RETALIATION FOR EXERCISE OF FMLA RIGHTS

### 81.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

### 82.

Ms. O'Toole was an eligible employee with the need for maternity leave because of the birth of her child and to care for her child as defined by the FMLA and the accompanying regulations, specifically 29 U.S.C. §§ 2611(2) and 2612(a)(1)(A), 29 C.F.R. 825.120 *et seq*.

### 83.

By firing Ms. O'Toole because of her pregnancy and desire for maternity leave or, alternatively, by taking her pregnancy and desire for maternity leave into account as a motivating factor for her termination, Defendant Board of Regents -- by and through its agents, the officers and mangers of the University of Georgia, including Ms. Boenig -- retaliated against her for expressing the desire to exercise her rights under the FMLA.

### 84.

Defendant's actions in retaliation for Ms. O'Toole's desire to exercise of her rights under the FMLA were committed with reckless disregard for her right to be

- 22 -

free from discriminatory treatment for exercising her rights under the FMLA, specifically 29 U.S.C. § 2612(a)(1)(A).

85.

The effect of Defendant's actions has been to deprive Ms. O'Toole of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits due her solely because of her desire to exercise her rights under the FMLA.

86.

As a result, Ms. O'Toole is entitled to both equitable and monetary relief for Defendant's violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B) – including, but not limited to, back pay, front pay or reinstatement, attorneys' fees and costs of litigation.

87.

Ms. O'Toole is also entitled to liquidated damages for the violation of her rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii).

## **RELIEF**

Plaintiff demands a TRIAL BY JURY and requests the following relief:

(a)    judgment in favor of Plaintiff and against Defendant under Counts One and Two for its unlawful employment practices in violation of Title VII and Title IX, respectively;

(b)    judgment in favor of Plaintiff and against Defendant under Counts Three and Four for its unlawful employment practices in violation of the FMLA;

(c)    an injunction prohibiting Defendant from engaging in further unlawful employment practices in violation of Title VII, Title IX, and the FMLA and from retaliating against Plaintiff or any witness for their participation in this action;

(d)    damages sufficient to make Plaintiff whole by providing for out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of Defendant's unlawful and discriminatory acts, together with interest thereon, all in an amount to be proven at trial;

(e)    damages sufficient to make Plaintiff whole by compensating her for the emotional distress and damage to her professional standing and reputation caused by Defendant's actions all in an amount to be proven at trial;

(f)    reinstatement or front pay plus such other equitable restitution and relief sufficient to cover life, disability, or health insurance and any lost retirement benefits due to Defendant's wrongful termination of Plaintiff's employment;

(g)     liquidated damages under the FMLA pursuant to 29 U.S.C. §

2617(a)(1)(A)(iii);

(h)     reasonable attorneys' fees and costs; and

(i)     such other and further relief as the Court deems just and proper.

Respectfully submitted,

JF BEASLEY, LLC

By:     /s/ John F. Beasley, Jr.
        John F. Beasley, Jr.
        Georgia Bar No. 045010
        jfbeasley@jfbeasleylaw.com
        31 North Main Street
        P.O. Box 309
        Watkinsville, GA 30677
        Telephone:  706-769-4410
        Facsimile:   706-769-4471

        Counsel for Plaintiff